**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | |
|---|---|
| Mitchell David Holbach, ) | |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| vs. ) | |
| ) | |
| Dr. Richard Jenkins, ) | Case No. 4:09-cv-026 |
| ) | |
| Defendant. ) | |

Plaintiff Mitchell Holbach is an inmate at the James River Correctional Center (JRCC). He initiated the above-entitled action by complaint on May 22, 2009, asserting claims against Dr. Richard Jenkins, the Vice President of Student Affairs for Minot State University, in his official and individual capacities. This matter is now before the court for an initial review as mandated by 28 U.S.C. §1915A.

**I.   BACKGROUND**

Holbach has filed at least five actions with this court[1] that are either directly or indirectly related to state-court convictions for stalking. The present case arises out of activities that occurred the Minot State University in March of 2006. Holbach's complaint alleges:

> On March 3, 2006, Dr. Richard Jenkins . . . issued a notice of no trespass prohibiting the plaintiff from entering onto Minot State university property.
> As grounds, defendant declared plaintiff had violated a no-contact order prohibiting the plaintiff of being within 300 feet of a Joy Dixon. Plaintiff had not violated any no contact order.
> Defendant violated plaintiffs right to due process of law and the presumption of innocence. Defendant violated plaintiff's right to equality of law.

---

[1] Two of the actions alleged violations of 42 U.S.C. § 1983 (Case Nos. 4:08-cv-074 and 4:09-cv-025) and the other three sought habeas corpus relief pursuant to 28 U.S.C. § 2254 (Case Nos. 4:07-cv-063, 3:09-cv-020, and 3:09-cv-023). Holbach also has pending a § 1983 case relating to his conditions of confinement (1:09-cv-014).

1

> On or about March 1, 2006, defendant sent plaintiff written correspondence via U.S. Postal Service, certified mail, return receipt, signature of acceptor required.
> Plaintiff alleges defendant was solicited, facilitated, and induced by the City of Minot Law Enforcement officials and/or domestic violence advocates to send correspondence to plaintiff. Next, law enforcement officials fabricated a false affidavit alleging plaintiff was seen "looking into Dixon's classroom" and "following her as she left the building" to obtain a warrant for plaintiff's arrest.
> On March 3, 2006, plaintiff was arrested at Minot State University by law enforcement officials while he was engaged in constitutionally protected activity.
> Immediately following plaintiff's arrest, defendant was solicited, facilitated, and induced to issue a letter of no trespass prior to adjudication by any court of the alleged offense, by law enforcement officials.
> Plaintiff denies the acts alleged by law enforcement officials. Following his arrest, plaintiff was held for 135 days in the Ward County Correctional Center without bail or bond revocation hearing.
> Defendant conspired to cause arrest of defendant and thereby banish plaintiff from Minot State University--a public institution--in violation of plaintiff's due process rights.

(Docket No. 2). He seeks damages against the defendant in both his individual and official capacities.

## II.   STANDARDS GOVERNING INITIAL REVIEW

Congress enacted the Prison Litigation Reform Act of 1995 ("PLRA") to address the burdens imposed by prisoner suits that too often are frivolous and without merit. Jones v. Bock, 549 U.S. 199, 202-203 (2007); Woodford v. Ngo, 548 U.S. 81, 84 (2006). One of the reforms enacted as part of the PLRA for cases in which prisoners are seeking to sue a governmental entity, officer, or employee is the requirement that courts conduct an early screening to weed out claims that clearly lack merit. 28 U.S.C. § 1915A. In conducting the screening, the court is required to identify any cognizable claims and to dismiss the complaint, or any part of it, that is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant. Id.

In enacting the PLRA, Congress chose not to impose a heightened pleading requirement for prisoner complaints, and, in this case, 42 U.S.C. § 1983 also does not impose any such requirement.

2

Jones v. Bock, 549 U.S. at 212-217.  Consequently, to state a cognizable claim, the complaint needs only to meet the minimal requirements of Fed. R. Civ. P. 8(a), which are that it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Erickson v. Pardus, 551 U.S. __, 127 S.Ct. 2197, 2200 (2007) (per curiam).  In addition, when a prisoner is proceeding *pro se*, the court is obligated to construe the complaint liberally and hold it to a less stringent standard than what would be required of attorneys.  Id.

But, this does not mean, however, that the court must accept anything and everything that is filed by a *pro se* prisoner.  In enacting the screening requirement, Congress expected it to be more than a ritualistic exercise and that the courts would be vigilant in allowing prisoners to proceed only with those claims that state a cognizable claim, that seek relief from a non-immune party, and that are not obviously baseless, frivolous, or malicious.

To meet the minimal requirements of Rule 8(a)(2) for pleading a cognizable claim, something more is required than simply expressing a desire for relief and declaring an entitlement to it.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 n.3 (2007).  The complaint must state enough to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  Erickson v. Pardus, 127 S.Ct. at 2200 (quoting Twombly, 550 U.S. at 555).  Conclusory and formulaic allegations of the elements of a cause of action are not sufficient.  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 US at 555-556).[2]

---

[2] In Ashcroft v. Iqbal, the Supreme Court further elucidated upon the "plausibility" requirement, stating:
As the Court held in Twombly, . . . the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. . . . .  A pleading that offers "labels and conclusions" or "a formulaic recitation of the

In the case of an action for a violation of federal civil rights under 42 U.S.C. § 1983, this means a plaintiff must allege a violation of a right secured by the Constitution or the laws of the United States and that the violation was committed by a person acting under color of state law in order to state a cognizable claim. West v. Atkins, 487 U.S. 42, 48 (1988); Walker v. Reed, 104 F.3d 156, 157-158 (8th Cir. 1997). Also, the pleading must allege a sufficient causal link between the alleged violation and the basis upon which a particular defendant is to be held responsible, keeping in mind that persons sued in their individual capacities for damages must be personally involved or directly responsible since § 1983 does not impose *respondeat superior* liability. Ashcroft v. Iqbal, 129 S.Ct. at 1948; Gordon v. Hansen, 168 F.3d at 1113.

Finally, even though the court is obligated to construe *pro se* complaints liberally, the court is not required to ignore facts that are pled by a prisoner when they undermine the prisoner's claim. The court may accept as true all facts pled in the complaint and conclude from them that there is no claim stated as a matter of law. E.g., Edwards v. Snyder, 478 F.3d 827, 830 (7th Cir. 2007);

---

elements of a cause of action will not do." . . . . Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." . . . .
    To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct allege. . . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "
    . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not "show[n]"--"that the pleader is entitled to relief."

129 S.Ct. at 1949-50 (citations omitted).

Thompson v. Illinois Department of Professional Regulation, 300 F.3d 750, 753-754 (7th Cir. 2002) (citing other cases).[3]

### III. DISCUSSION

It is somewhat difficult to discern from Holbach's complaint exactly what his claims are, particularly given the apparent inconsistencies from one paragraph to the next. Holbach starts out alleging that Dr. Jenkins issued a notice of no trespassing on March 3, 2006, and a number of paragraphs later again alleges that a letter of no trespass was issued on March 3, 2006, after his arrest on the Minot State Campus. However, in between these allegations, Holbach makes reference to a letter sent on March 1, 2006, that purportedly was solicited by local law enforcement officials and domestic violence advocates and later, in the section of the complaint requesting relief, he makes further reference to a March 1, 2006, letter sent to him by Dr. Jenkins.

This is not the first case to address the events occurring on the Minot State Campus in March of 2006, however. The City of Minot prosecuted Holbach for the misdemeanor offense of trespassing related to the activity occurring on the Minot State Campus. Holbach was convicted and appealed his conviction to the North Dakota Supreme Court, which summarily upheld the conviction. Minot v. Holbach, 2007 ND 94, 734 N.W.2d 342 (Table). The City's brief, which is the only brief electronically available, states the following in terms of the facts:

---

[3] In Edwards v. Snyder, the Seventh Circuit stated the following:
Complaints may be susceptible to dismissal for failure to state a claim for various reasons. For example, a plaintiff may allege too little in his complaint and fail to meet the minimal federal pleading requirements. See Fed. R. Civ. P. 8. Even if a complaint passes the minimal threshold of pleading standards, dismissal for failure to state a claim may be appropriate if it "appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." Marshall v. Knight, 445 F.3d 965, 968 (7th Cir.2006); Dealt v. Carter, 224 F.3d 607, 610 n. 1 (7th Cir.2000). A complaint can also allege too much; a plaintiff may unwittingly plead himself out of court by alleging facts that preclude recovery. See McCreary v. BAY, Inc., 453 F.3d 882, 888 (7th Cir. 2006).
478 F3d at 830.

> Officials (Lisa Ericksmoen and Dr. Jenkins) at Minot State University learned that a student, Joy Dixon, had a court order prohibiting the defendant from being within a 300 feet of her. (T. 33) An attempt was made to contact the defendant for purposes of discussing this issue. (T.34, 38). On March 1, 2006 Lisa Ericksmoen wrote a letter, in conference with Dr. Jenkins, to the defendant prohibiting him from being on Minot State University property. (ie: a No Trespass Letter).(T.35). Ericksmoen knew the defendant was in jail, so she brought the letter down to the Ward County Jail to be given to him. (T. 36, 39). Ericksmoen testified that she, as a designee of Dr. Jenkins, did have authority to ban persons from the property of Minot State University. (T. 32, 35, 37). On August 29, 2006, Twyla Llewellyn saw the defendant on Minot State University property. (T. 42-43, 44-45). On September 15, 2006, pursuant to the terms and conditions of the defendant's probation(51-06-K-0110), Kristin Plessas conducted a search of his vehicle. Found during the search, was the No Trespass Letter written to the defendant and delivered by Ericksmoen to the jail.

Brief of Appellee City of Minot, Minot v. Holbach, supra, (No. 20070042), 2007 WL 1708574.

At the time of the events at the Minot State Campus in March 2006, Holbach was already the subject of a pending charge for stalking Ms. Dixon, which had been filed in January 2006. Holbach later pled guilty to that charge on July 17, 2006. Eventually, he was placed on probation. Later his probation was revoked and he appealed the revocation to the North Dakota Supreme Court.[4] And, in his appeal, Holbach made reference to the events that occurred at the Minot State Campus. Notably, he stated that the Dr. Jenkins letter was issued on March 1, 2006. Holbach's brief states in part the following:

---

[4] The state district court's docket for Case No. 51-6-K-110-1, which is accessible from the North Dakota Supreme Court's website, reveals that Holbach was charged with the offense of stalking Ms. Dixon in a complaint filed in state district court on January 17, 2006. (Doc. No. 1). He made his initial appearance and was released on bond. (Doc. Nos. 5 & 9). On March 3, 2006, and probably as a result of the events occurring on the Minot State University Campus that are the subject of the present complaint, he was arrested pursuant to an order issued by the state district court. (Doc. Nos. 16-18). Following revocation of his release, Holbach underwent a court-ordered evaluation. (Doc. Nos. 19-21). On July 17, 2006, he entered a guilty plea to the stalking charge filed in January 2006. (Doc. No. 33). He was sentenced to serve time in jail and was placed on supervised probation, subject, among other things, to the condition that he not have contact with or be within 500 feet of Dixon, her home, or her children's school. Later, his probation was partially revoked and he appealed the revocation. (Doc Nos. 76-77). The North Dakota Supreme Court upheld the revocation in State v. Holbach, 2007 ND 114, 735 N.W.2d 862. And, as later explained in State v. Holbach, 2009 ND 37, ¶ 5, 763 N.W.2d 761, the October 2006 revocation was based upon Holbach's continued stalking and harassment of Dixon. Holbach was sentenced to jail and upon his release, he continued to stalk and harass Dixon, which resulted in yet another conviction for stalking and two counts of disobedience of court orders. Id. at ¶¶ 6-9. These convictions were upheld by the North Dakota Supreme Court in its 2009 State v. Holbach decision.

> On August 29, 2006, Holbach was charged with criminal trespass on the Minot State University Campus. On March 1, 2006, Dr. Richard Jenkins, Vice President, had issued a letter to Holbach advising him that he was prohibited from being on the MSU Campus. Prior to the trial, the City of Minot endorsed only the names of Dan Strandberg, of Minot Police, and Twyla Llewelyn of North Dakota Parole and Probation as the only witnesses. On January 3, 2007, the City filed a Notice to Endorse Additional Witnesses, and added Kristin Plessas as a witness. They alleged that Ms. Plessas found the original March 1, 2006, letter from Dr. Jenkins in Holbach's vehicle when she arrested him in September, 2006, on the petition for revocation of probation. Holbach objected prior to the January 5, 2007, jury trial. The Court ruled that Ms. Plessas could only testify as "to chain of custody of the letter." Following trial, Holbach was convicted of Criminal Trespass.

Brief of Appellant Mitchell Holbach, State v. Holbach, 2007 ND 114, 735 N.W.2d 862 (No. 20060297), 2007 WL 1708531.

Liberally construing Holbach's complaint in light of the foregoing, it appears he is complaining that his due process and equal protection rights were violated by two different acts on the part of Dr. Jenkins. The first is the "no trespass" letter dated March 1, 2006, excluding Holbach from the Minot State campus.[5] The second is Dr. Jenkins's alleged participation in what Holbach characterizes as his false arrest for trespassing.

### A. Issuance of the "no trespass" letter

#### 1. Due Process

Holbach claims that his constitutional rights were violated by the issuance of the "no trespass" letter on March 1, 2006, because he was not first afforded "due process." The prevailing authority, however, is that members of the general public have neither a liberty nor property interest in being present on a university campus, and, absent any such interest, are not entitled to the procedural due process protections of the Fourteenth Amendment. See Moore v. Ricotta, 29

---

[5] Even if there was another letter on March 3, 2006, further barring Holbach from the Minot State University campus, his complaint still fails to state a cognizable claim for a violation of § 1983 for the reasons articulated herein.

7

Fed.Appx. 774 (2d. Cir. 2002); <u>Souders v. Lucero</u>, 196 F.3d 1040, 1046 (9th Cir. 1999) (plaintiff failed to establish he had a constitutionally-protected interest in having access to the campus, and thus, there was no need to decide whether procedures employed to exclude the plaintiff were adequate).

In this case, Holbach does not allege he was employed by Minot State University or enrolled there as student during the time period relevant to his complaint. And, from all appearances, his status at the time of the issuance of the "no trespass" letter was that of a member of the general public. Consequently, Holbach has failed to allege a cognizable claim of violation of procedural due process.

Holbach also claims that he was engaged in constitutionally-protected activity at the time of his removal from campus, but fails to describe what the protected activity was. This conclusory allegation is insufficient to state a claim of infringement of some other constitutionally-protected right incorporated by the Due Process Clause of the Fourteenth Amendment. In part, this is because a university is not required to grant unfettered access to its campus, even though it may possess some of the attributes of a public forum. <u>See, e.g.</u>, <u>Widmar v. Vincent</u>, 454 U.S. 263, 267-68 (1981) ("[T]his Court have never denied a university's authority to impose reasonable regulations compatible with [its educational] mission upon the use of its campus and facilities. We have not held, for example, that a campus must make all of its facilities equally available to students and nonstudents alike, or that a university must grant free access to all of its grounds or buildings."); <u>Greer v. Spock</u>, 424 U.S. 828, 836 (1976) (rejecting the suggestion that government owned or operated property becomes a public forum for purposes of the First Amendment when freely visited

by the public); Souders v. Lucero, 196 F.3d 1040 (9th Cir. 1999); Moore v. Black, 2004 WL 1950338, at **5-6 (W.D.N.Y. Sept. 2, 2004).[6]

### 2. Equal Protection

Generally speaking, the Equal Protection Clause requires the government to treat similarly situated persons alike. See, e.g., City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985); Murphy v. Missouri Department of Corrections, 372 F.3d 979, 984 (8th Cir. 2004). Conversely, treatment of dissimilarly situated persons in a dissimilar manner does not violate the Equal Protection Clause. See, e.g., Kevan v. Smith, 100 F.3d 644, 647-48 (8th Cir. 1996). Thus, a critical element is whether Holbach was treated differently than others to which he was similarly situated. Id.

In this case, Holbach does not claim to have been singled out for discriminatory treatment. Further, his complaint is devoid of any facts that would suggest that similarly situated individuals were permitted on campus while he was not. In short, Holbach has failed to plead a cognizable

---

[6] In Souders v. Lucero, supra, the Ninth Circuit was confronted with case that was similar to what, from all appearances, was the case here. The plaintiff was an Oregon State University (OSU) alumnus who filed a § 1983 action against several of his alma mater's security service employees, claiming they had wrongfully banned him from campus in response to stalking complaints filed against him by two female students. The district court dismissed the suit on motion by the defendants, finding, *inter alia*, that the plaintiff had failed to state a cognizable constitutional claim. On appeal, the plaintiff asserted, among other things, that the OSU campus was a public space akin to a street or public park to which he had a right to visit regardless of his conduct. The Ninth Circuit disagreed, stating, in part, the following:
> Souders' argument-that he has a right to be on the OSU campus, regardless of his conduct, because he is a member of the general public and the campus is open to the public-goes too far. This cannot be the case. Whatever right he has to be on campus must be balanced against the right of the University to exclude him. The University may preserve such tranquility as the facilities' central purpose requires. See Laurence H. Tribe, American Constitutional Law 690 (1980). Not only must a university have the power to foster an atmosphere and conditions in which its educational mission can be carried out, it also has a duty to protect its students by imposing reasonable regulations on the conduct of those who come onto campus.

193 F.3d at 1045.

equal protection claim. See, e.g., Hartsfield v. Department of Corrections, 107 Fed.Appx. 695, at *1 (8th Cir. 2004) (unpublished per curiam); Kevan v. Smith, supra.

### B. Conspiracy to effectuate a false arrest

Holbach also attempts to plead a cause of action against Dr. Jenkins for a constitutional violation premised upon an allegedly false arrest. He alleges that law enforcement officials obtained his arrest based upon an affidavit that falsely claimed he had been seen "looking into Dixon's classroom" and "following her as she left the building." However, there is no allegation that Dr. Jenkins provided the allegedly false information or had anything to do with the preparation of the affidavit that led to his arrest. Holbach also alleges he did not violate an outstanding order prohibiting him from having contact with Dixon, which he claims was the basis for Dr. Jenkins issuing, or causing to be issued, the "no trespass" letter. However, there is no claim that Dr. Jenkins had anything to do with the issuance of the outstanding "no contact" order, much less a determination that it had been violated.[7]

Simply put, Holbach's disjointed and conclusory allegations of Dr. Jenkins's involvement in a conspiracy with law enforcement officials to effectuate a false arrest are not sufficient to state a constitutional claim. See Johnson v. Esry, 210 F.3d 379 (Table), 2000 WL 375269, at *1 (8th Cir. 2000) (unpublished per curiam); Manis v. Sterling, 862 F.2d 679, 681 (8th Cir.1988) (conspiracy allegations must be pleaded with sufficient specificity and factual support to suggest meeting of minds).

---

[7] The publically available information suggests that the "no contact" order was issued by the court, possibly in connection with the pending charge for "stalking," and the determination that it had been violated on March 3, 2006, was made initially by law enforcement authorities, who then sought a court order for Holbach's arrest.

### C.     Claims against Dr. Jenkins in his official capacity

Aside from the foregoing, Holbach also has no claim for damages against Dr. Jenkins in his official capacity. As the Vice President of Student Affairs for Minot State University, Dr. Jenkins is a state employee. See Skjervem v. Minot State University, 2003 ND 52, ¶ 12, 658 N.W.2d 750 (holding that MSU is part of North Dakota's university system and, as such, is an arm of the State). A suit against a state official in his official capacity is akin to a suit against the state. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989); Monroe v. Arkansas State University, 495 F.3d 591, 594 (8th Cir. 2007); Alsbrook v. City of Maumelle, 184 F.3d 999, 1010 (8th Cir. 1999). States and their agencies and institutions are "not persons" for purposes of § 1983. See id. Also, states are immune from suit under the Eleventh Amendment for any claim for damages in an action brought pursuant to 42 U.S.C. § 1983. Monroe v. Arkansas State University, 495 F.3d at 594; Alsbrook v. City of Maumelle, 184 F.3d 999 at 1010.

### IV.    **CONCLUSION AND RECOMMENDATION**

In summary, Holbach's complaint is devoid of any cognizable constitutional claim against Dr. Jenkins. Accordingly, the undersigned **RECOMMENDS** that the above-entitled action be **DISMISSED WITHOUT PREJUDICE** pursuant to the authority granted by 28 U.S.C. § 1915A(b).

## **NOTICE OF RIGHT TO FILE OBJECTIONS**

Pursuant to D.N.D. Civil L.R. 72.1(D)(3), any party may object to this recommendation within ten (10) days after being served with a copy of this Report and Recommendation.  Failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond.

Dated this 15th day of July, 2009.

>*/s/  Charles S.  Miller, Jr.*
>Charles S.  Miller, Jr.
>United States Magistrate Judge